UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------x
: 
**UNITED STATES OF AMERICA**        :        No. 3:23-cr-00168-VDO
:
v.                                  :
:
**SEAN FALZARANO**                  :        May 13, 2024
:
------------------------------------------------------x

## ORDER DENYING MOTION FOR RECONSIDERATION

Before this Court is Defendant's Motion for Reconsideration of the Court's previous order denying without prejudice Defendant's Motion to Seal Exhibits to the Motion to Suppress. *See* Mot. Reconsider (ECF No. 45). This motion presents an all-too-common quandary for judges: what to do when the basis provided to the Court for the relief sought warrants a denial of the motion, but the Court's independent review suggests another outcome might be more appropriate. For the following reasons, the Motion for Reconsideration is **DENIED** but the Court **ORDERS** limited redactions.

I.   BACKGROUND

In January 2022, Defendant Sean Falzarano was a Fairfield University nursing school graduate student working on his capstone project at Yale New Haven Hospital's St. Raphael's campus. *See* Mot. Suppress Ex. A, Falzarano Decl. (ECF No. 34-2) ¶ 2. One afternoon, security guards searched and emptied his locker. *See id.* ¶¶ 3–8. He was later arrested and charged with five counts of tampering with a consumer product in violation of 18 U.S.C. § 1365(a)(4). *See id.* ¶ 13 (describing arrest); Indictment (ECF No. 1).

Jury selection is currently set to proceed on September 5, 2024. *See* Scheduling Order (ECF No. 29). On February 20, 2024, Falzarano filed a Motion to Suppress the fruits of the

security officer's search and his statements.  *See* Mot. Suppress (ECF No. 34).  Along with this motion, Falzarano filed a Motion to Seal Exhibits B through V: every single exhibit except Exhibit A, his declaration ("Exhibits").  *See* Mot. Seal (ECF No. 35); Sealed Exs. B–V (ECF No. 36).  The Motion to Seal was two sentences long.  Defense counsel simply stated that sealing was warranted "in the interest of justice as they contain law enforcement reports and other evidence that the government has designated as protected material."  Mot. Seal at 1.  It did not cite the Local Criminal Rule on sealing, *see* D. Conn. L. Cr. R. 57, or any other legal authority supporting this position.

The Honorable Jeffrey A. Meyer referred the Motion to Seal to me.  *See* Order (ECF No. 37).  I denied the motion without prejudice to refiling.  *See* Order on Mot. Seal (ECF No. 42).  I identified two key deficiencies: (1) defense counsel failed to file a memorandum of law "articulating the specific grounds in support of sealing," and (2) the Exhibits covered different topics (thus warranting different reasons for sealing).  *Id.*  I then articulated the applicable sealing standard under the Local Rule of Criminal Procedure 57 and binding precedent.  Last, I gave counsel an opportunity to <u>refile the motion to seal</u> with the following specific directions:

> If either side would like to have the issue revisited, in whole or in part, by March 19, 2024, a motion to seal shall be filed that explains why sealing of <u>each of the individual exhibits</u> is supported by <u>clear and compelling reasons</u>, including an explanation of how such a request is <u>narrowly tailored</u> to the reasons given. Having reviewed the exhibits, the Court can foresee at a minimum allowing certain redactions of personal information of third parties or of the Defendant. As such, the Clerk of the Court is respectfully asked to maintain the documents under seal until either March 20, 2024, or until a new motion is filed and ruled upon. If no motion is filed by March 19, 2024, the Clerk is instructed to unseal the documents.

*Id.* (emphasis added).  In other words, I set forth counsel's legal burden, explained counsel would need to address each specific exhibit, and identified topics the Court would be inclined to seal.

Instead, on March 18, 2024, defense counsel filed a three-page Motion for Reconsideration, requesting that I revisit my decision denying the Motion to Seal without prejudice.  *See* Mot.

2

Reconsider. Counsel did not cite the reconsideration legal standard. Instead, counsel only cited to Local Rule 57 and the District's Standing Order on Discovery, and did so in cursory fashion. Furthermore, counsel did not separately address each exhibit as ordered.

## II.   ANALYSIS

When evaluating a Motion for Reconsideration in a criminal case, the Local Rules direct courts to use Rule 7(c) from the Local Rules of Civil Procedure. *See* D. Conn. L. Cr. R. 1(c). Local Rule 7(c) sets forth the "strict standard": a motion for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1; *see Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (explaining the three grounds for granting reconsideration are (1) "intervening change of controlling law," (2) "the availability of new evidence," or (3) a "need to correct a clear error or prevent manifest injustice") (quoting 18 C. Wright, A. Miller & E. Cooper, Fed. Practice & Procedure, § 4478 at 790). Given that defense counsel never pointed to "controlling decisions or data" in the first place, the Court had nothing to overlook. *See* D. Conn. L. Civ. R. 7(c)1; *Protect Our Defenders v. Dep't of Defense*, No. 3:17-cv-02073 (VLB), 2020 WL 978836, at *1 (D. Conn. Feb. 28, 2020) ("A motion for reconsideration is not an opportunity for the losing party to plug the gaps of a lost motion or to advance new arguments to supplant those that failed in prior briefing."). Accordingly, to the extent the motion was intended to be filed as a Motion for Reconsideration under Local Rule 7(c), it is **DENIED**.

That being said, the Court presumes that Defendant intended its "Motion for Reconsideration" to be a "Renewed Motion to Seal" subject to the sealing standard. Such a presumption seems appropriate due to my previous order and defense counsel's citation to local rules on sealing. As an initial matter, Falzarano's counsel repeatedly indicated that Yale New

Haven Hospital ("YNHH") objects to the public disclosure of Exhibits B through V. *See* Mot. Reconsider at 1, 3; Hr'g on Mot. Reconsider (ECF No. 59). "The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case," but non-parties frequently intervene in criminal matters when warranted. *United Stats v Aref*, 533 F.3d 72, 81 (2d Cir. 2008). YNHH is not an Intervenor but is listed as an Interested Party because its counsel, Joseph Martini, filed a Notice of Appearance on March 27, 2024. *See* Not. Appear. (ECF No. 55). I note Falzarano's attorney does not represent YNHH.

With respect to the substance, the Court reiterates the binding legal authority on sealing documents from public access. The public has a First Amendment right of access to judicial proceedings and documents in a criminal case and a common law presumptive right of access to documents that are "relevant to the performance of a judicial function and useful to the judicial process…." D. Conn. L. Cr. R. 57(b)(3); *see also Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980). The Local Rules of Criminal Procedure establish that a Court is not to allow a litigant to seal a document from public access unless "the presumption of access to the particular document is outweighed by countervailing factors in favor of sealing, such as the danger of impairing law enforcement or judicial efficiency, and privacy interests" (i.e., the standard to overcome the common law right of access) or unless "sealing is essential to preserve compelling interests, and that sealing in whole or in part is narrowly tailored to serve those interests" (i.e., the standard to overcome First Amendment right of access). D. Conn. L. Cr. R. 57(b)(3). Whether the Government has chosen to designate a document as protected does not necessarily create a "countervailing factor" in favor of sealing or demonstrate a "compelling interest," given that rules provide that "[n]o document may be sealed merely by stipulation of the parties." D. Conn. L. Cr. R. 57(b)(3)(C). Ultimately, it is the movant's burden to establish sealing is warranted. *See*

4

*DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1987); *Mirlis v. Edgewood Elm Hous., Inc.*, 581 F. Supp. 3d 394, 408 (D. Conn. 2022) (same).

As a threshold matter, the Court finds that Exhibits B through V are "judicial documents" to which the public has a presumptive right to access. A "judicial document" is one that is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo I*, 44 F.3d 141, 145 (2d Cir. 1995). "A document is thus 'relevant to the performance of the judicial function' if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (quoting *Amodeo I*, 44 F.3d at 145–46). Because the Court must consider Exhibits B through V in ruling on the Motion to Suppress, I conclude the Exhibits are "judicial documents" "subject to a presumptive right of public access under both the First Amendment and common law rights." *Matter of New York Times*, 828 F.2d 110, 114 (2d Cir. 1987) (holding there is a "First Amendment right of access" to "written documents submitted in connection with a suppression motion"); *see Olson v. Major League Baseball*, 29 F.4th 59, 88–89 (2d Cir. 2022) (holding a motion's exhibit is a "judicial document" because the court relied on it to rule on the motion).

Once the documents sought to be sealed are determined to be "judicial," the court must determine how much the public's presumptive right of access weighs. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006). As the Second Circuit articulated in *United States v. Amodeo II*, 71 F.3d 1044, 1049 (2d Cir. 1995), the public's right to access a document functions on a sliding scale, which is dependent on the "role of the material at issue" and the "resultant value of such information to those monitoring federal courts." "Generally, the

5

information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* The presumption of public access to exhibits concerning "discovery disputes or motions *in limine* is generally somewhat lower" than the public access presumption for trial or dispositive motion exhibits. *Brown*, 929 F.3d at 50. When it comes to a motion to suppress evidence, the public has a legitimate interest in "knowing the grounds on which government conduct in obtaining evidence is challenged," and "[a]cess to written documents filed in connection with pretrial motions is particularly important … where no hearing is held and the court's ruling is based solely upon the motion papers." *Matter of New York Times*, 828 F.2d at 114 (citations removed); *Matter of Public Defender Serv. for Dist. Columbia*, 607 F. Supp. 3d 11, 23 (D.D.C. 2022) (stating the public's interest in documents related to a motion to suppress is particularly high, because a suppression hearing "resembles a bench trial" insofar as witnesses are sworn and testify, the outcome often requires the court to resolve issues of fact, it typically involve an individual's "important constitutional rights," and "the conduct of law enforcement is often at issue"). Here, the Court finds that the public's presumptive right of access to the motion to suppress evidence is high, albeit lower than evidence concerning a dispositive motion or trial. Namely, the Court's ruling on the motion to suppress has the potential to impact the outcome of Falzarano's case as it concerns fruits of a search and his statements. Because the Court will hold an evidentiary hearing <u>only as to</u> the fruits of the search, *see* Order re Evid. Hr'g (ECF No. 60), the public's right to access exhibits concerning Defendant's statements is even higher than those concerning the fruits of the search. *See Matter of New York Times*, 828 F.2d at 114.

   Having determined the public's right to access is at the high end of the continuum, I balance the competing considerations, including "countervailing factors" in favor of sealing. I consider

Falzarano's Sixth Amendment right to a fair trial and the public's First Amendment right to access the courts, balancing "the substantial probability that the defendant's right could be prejudiced by publicity resulting from public dissemination of information contained in judicial records and disclosed in pretrial proceedings." *United States v. Giordano*, 158 F. Supp. 2d 242, 245 (D. Conn. 2001) (citing *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 9 (1986)). I consider Falzarano's privacy interests and the privacy interests of non-parties, including potential witnesses. *See Matter of New York Times*, 828 F.2d at 115–16; *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) (stating "that the privacy interests of innocent third parties … should weigh heavily in a court's balancing equation"); *see also* D. Conn. Cr. App'x Standing Order on Discovery § (H)(1), (3) (permitting witness statements and law enforcement reports to be designated as "Protected Discovery Material" but requiring a party to move to seal when filing "absent consent of the opposing party"). I also consider law enforcement's interest in keeping the records sealed, including but not limited to the need for voluntary cooperation in an ongoing or future criminal matter. *Amodeo II*, 71 F.3d at 1050 ("If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access."); *c.f. Gannett Media Corp. v. United States*, 2022 WL 17818626, at *2 (2d Cir. Dec. 20, 2022) (summary order) ("While the Court acknowledges that Officer Wozniak might not want the information unsealed, the Government cites no authority establishing an officer's right to the privacy of internal investigations and police proceedings resulting in a finding of the officer's misconduct in the performance of an official duty.").

Ultimately, I conclude that Exhibits B through V should be publicly filed with the exception that certain limited information should be redacted. The information requiring redaction includes:

(1) information statutorily required to be sealed, including information identified under Local Rule 57(b)(3)(C) (such as patient information and/or health care records) and Rule 49.1 of the Federal Rules of Criminal Procedure; and

(2) the identities of YNHH staff, YNHH patients, and individuals (other than Falzarano) who gave statements—such identifying information includes their names, work titles, dates of birth, ages, phone numbers, e-mail addresses, work or home addresses, and images of their faces.

Because the privacy interest of "innocent third parties" weighs heavily in the balancing equation, *see TheStreet.Com*, 273 F.3d at 232, and employees should be encouraged to participate in internal investigations without "fear [of] reprisal or retaliation from current or former co-workers," 411 F. Supp. 3d 216, 233 (D. Conn. 2019), preserving these individuals' anonymity at this stage in the litigation is tantamount. Such redactions are narrowly tailored to allow the public to access the vast majority of the Exhibits' substance while still serving the compelling interest of protecting the identities of individuals who are not parties but who have been brought into the orbit of this action—some by happenstance and some for reporting conduct in their workplace. *See* D. Conn. L. Cr. R. 57(b)(3)(A).

Furthermore, I find the movant has <u>not</u> satisfied his burden to show the memoranda of interview and investigative reports should be redacted in their entirety, as counsel did not cite legal authority that these documents—including those relevant to an ongoing investigation—must automatically be sealed or that it is appropriate in this case. During oral argument, counsel clarified there may be some ongoing criminal matters but did not indicate whether cooperating witnesses

8

were a concern.  *See* Hr'g on Mot. Reconsider at 18:00–20:00.  The individuals who gave statements appear to have done so largely in the context of their employment.  The risk that they will not voluntarily cooperate in the future is reduced given the ample statutory protections against workplace retaliation.  Also, I have considered the possibility that public disclosure of these documents could create a "roadmap" for other diversion schemes, and I find this risk does not outweigh the public's right to access the courts.  This is particularly true given the conduct sought to be sealed is the underlying conduct the Government will need to prove at trial.  Further, allowing the public access to this information could assist the health care sector in their mitigation and prevention efforts and allow the public to monitor events that can and do directly impact the health of patients in the community.

Lastly, I do not find that the photographs warrant redaction in their entirety.  The photographs are focused on the results from the search, and the background depicts a room with no decorations or other identifying information.  I cannot identify any reason, and the parties have not provided a convincing one, why these photos should be sealed beyond merely redacting YNHH staff's faces.

To the extent defense counsel believes § H(3) of the Standing Order on Discovery permits parties to stipulate to filing documents under seal if they are marked as Protected Discovery Material, *see* D. Conn. L. R. Cr. App'x, I disagree.  Subsection H(3) states, "When a party believes it is necessary to file any Protected Discovery Material, absent consent of the opposing party, that party must comply with Local Criminal Rule 57(b) by moving to file the material under seal."  A better reading of this sentence is that a party who wants to file a document—earmarked as Protected Discovery Material—may file the document publicly if opposing counsel consents; if opposing counsel does not consent, the party must move to seal the document.  Admittedly, this

often puts the onus on a party to seek sealing when in fact that party feels neutral about whether the document is publicly filed. But this District would never contravene the public's First Amendment and common law rights to access the courts simply by allowing parties to agree to sealing. Surely the Second Circuit would not allow it. This is why the Local Rule on sealing specifically states: "No document may be sealed merely by stipulation of the parties." D. Conn. L. Cr. R. 57(b)(3)(C). In any event, § H(3) is an invitation for parties to revisit previous Protected Discovery Material designations when documents no longer need to be shielded and should be publicly filed.

### III. CONCLUSION

For the above reasons, Defendant's Motion for Reconsideration is DENIED. The Court construes the motion as a Motion to Seal. Defense counsel shall <u>publicly file</u> Exhibits B through V with the following redactions:

(1) information statutorily required to be sealed, including information identified under Local Rule 57(b)(3)(C) (such as patient information and/or health care records) and Rule 49.1 of the Federal Rules of Criminal Procedure; and

(2) the identities of YNHH staff, YNHH patients, and individuals (other than Falzarano) who gave statements—such identifying information includes their names, work titles, dates of birth, ages, phone numbers, e-mail addresses, work or home addresses, and images of their faces.

IT IS SO ORDERED.

/s/ Maria E. Garcia
Hon. Maria E. Garcia
United States Magistrate Judge